WILLIAM MERSON v. ELIZABETH MERSON.

*Equity practice—Exclusion of testimony—Appeal—Statute of frauds—Land contract—Execution of deed—Ratification.*

1. It is certainly an unusual practice for a circuit judge to attempt to exclude testimony in a chancery case. On appeal, a case is tried *de novo*, and the appellate court is expected to have the benefit of all offered testimony. The only exceptions to this rule are when, on grounds of public policy, the testimony should not be permitted to be elicited, as in case of a flagrant attempt to disregard the privilege of witnesses, or where it becomes necessary to fix a reasonable limit to the number of witnesses called to a single point, as in case of an attempted impeachment. But ordinarily the offered testimony should be taken subject to objection.[1]

2. A husband contracted for the purchase of a city lot, and, the purchase price having been paid, a deed of the lot was executed to his wife, and both signed a memorandum, indorsed on the

---

[1] See *Meech v. Lee*, 82 Mich. 274, holding that, where testimony is taken in open court in a chancery suit, the circuit judge has no authority to absolutely reject testimony, unless of a nature so scandalous as not to be proper to appear in the record of the proceedings; that if testimony is forced into a case which is evidently irrelevant and immaterial, a motion may be made to expunge it, and the court may order it expunged, with costs against the solicitor insisting upon its being taken; but it must be returned on appeal, in order that the appellate court may pass upon the correctness of the ruling.

contract, acknowledging the receipt of the deed. The husband afterwards filed a bill, alleging that the deed was fraudulently obtained, and, on the hearing, his oral assent to the execution of the deed to his wife was testified to by several witnesses, which testimony was objected to on the ground that oral authority to convey to the wife was void under the statute of frauds. And it is held that the complainant is not at liberty to raise this question; that the vendor was the owner of the legal title; that complainant had an equitable title, which he could discharge by a surrender of the contract; that he acknowledged in writing the receipt of a deed in fulfillment of the contract; and that the transaction was not in the nature of a parol agreement, but a ratification in writing of the transfer of the legal title by the vendor.[1]

Appeal from Saginaw. (Edget, J.) Submitted on briefs April 13, 1894. Decided June 16, 1894.

Bill to declare a trust in lands, and to compel a conveyance. Complainant appeals. Decree affirmed. The facts are stated in the opinion.

*Swarthout & O'Keefe,* for complainant.

*Trask & Smith,* for defendant.

MONTGOMERY, J. Complainant and defendant are husband and wife. Complainant files this bill, alleging that defendant obtained the title to a lot in the city of Saginaw in her own name, in fraud of complainant's rights, under circumstances substantially as follows: In March, 1872, complainant contracted with one George L. Burrows

---

[1] See *Crittenden v. Canfield,* 87 Mich. 152, where a husband, who was equitably entitled to a reconveyance of 20 acres of land which he had conveyed to his brother by a deed absolute in form, but intended as a mortgage, in anticipation of approaching death directed that the land be reconveyed to his wife, which was done; which deed is held to have vested the title to the land in the wife as effectually as if taken in the name of the husband, and he had deeded directly to the wife, in consideration of love and affection, and in anticipation of approaching death.

to purchase the lot in question at the price of $300, of which $15 was paid down, and the remainder was made payable in five equal annual payments. The bill alleges:

"That the several payments on said agreement were due at the bank of George L. Burrows & Co., the business hours of which are between 9 A. M. and 3 P. M.; and, as your orator was at work on some occasions when said payments became due on said agreement, he instructed said defendant to make said payments for him, with the money which your orator gave her for this purpose. * * *

"Your orator now charges that on or about the 30th day of July, 1880, said defendant made a payment on said agreement with the money of this complainant; and your orator now charges that said defendant, by fraud and misrepresentation, induced said George L. Burrows and his wife, Julia S., to make this defendant the sole grantee in said deed instead of your orator. * * *

"Your orator alleges that he never made an assignment, written or oral, of said agreement by and between George L. Burrows and himself, to this defendant or to any other party; that he never made to her a gift of his rights under said agreement, nor has he ever made her a gift of said real property, or any part thereof; that, so soon as he learned that this defendant had succeeded in having said deed executed to her, he said to her that it was not legal, that he never consented to her having said deed in her name, and that she would have to take the deed back, and have it made out in your orator's name, and that she had acted fraudulently with the money he gave her to apply on said agreement."

The answer admits that defendant received the deed as stated, but alleges that the payments were made for the land out of the individual means of the defendant; denies the allegations of fraud, and alleges that said complainant requested the deed to be made by Burrows to the defendant, and himself receipted to Burrows therefor; that he expressly waived all rights he had in said premises in favor of the defendant.

The complainant's testimony upon the subject of having authorized the making of a deed is as follows:

"I think they got me over to Mr. Burrows' bank to sign some paper, but I did not know what it was, exactly, at the time. Before going over to the bank I had a conversation with my wife in my own kitchen at home. She wanted me to sign the contract in favor of her, as I understand, and I said 'No,' I would not do it, because I did not want her to have everything I had. I wanted her to have something of the property, and not have it all. The conversation I had with my wife in the kitchen took place before the deed was executed to her. It was some time before the execution of the deed. * * * At that time I did not know that I had signed this contract to my wife. To my knowledge I did not sign any paper at all. I can't read writing, and, if they got me to sign anything, I did not know what I was signing. I know that she wanted me to sign a paper at that time in my kitchen, and I didn't want to do it."

On cross-examination he testified, in answer to the question:

"You supposed you were going to get a deed of your property?

"A. Yes; it was my money that paid for it. I did not state to Mr. Burrows that it was impossible for me to make payments on this contract. I did not instruct or authorize him to give a deed to Mrs. Merson. I deny that it is true, as far as my knowledge or recollection about it.

"Q. Do you mean to say that you didn't tell Mr. Burrows that?

"A. Well, I don't recollect. I know, if I told Mr. Burrows so, I would know it. When I found that she had a deed, I said it was fraudulently got."

On the back of the contract was indorsed the following memorandum:

"Received deed for within premises, July 30, 1880.
   [Signed]        "ELIZABETH MERSON.
                   "WILLIAM MERSON."

Defendant also called two witnesses, who testified that complainant signed his name to this contract at the residence of the parties, and Mrs. Merson testified to the same thing. Mr. Burrows testified that complainant directed the deed to be made to the defendant.

A preliminary question is raised, relating to an error committed by the circuit judge in excluding some testimony offered by complainant, which it is now claimed would have tended to corroborate the complainant's claim that his money, alone, paid the purchase price of the lot. It is certainly an unusual practice for a circuit judge to attempt to exclude testimony in a chancery case. On appeal, a case is tried *de novo*, and the appellate court is expected to have the benefit of all offered testimony. The only exceptions to this rule are when, on grounds of public policy, the testimony should not be permitted to be elicited, as in case of a flagrant attempt to disregard the privilege of witnesses, or where it becomes necessary to fix a reasonable limit to the number of witnesses called to a single point, as in case of an attempted impeachment. But ordinarily the offered testimony should be taken subject to objection, and such course should have been adopted in the present case. The circuit judge evidently excluded the testimony for the reason that if the offered testimony were admitted, and established all that was claimed for it, still the complainant would not be entitled to the relief prayed. In doing so he took the risk of the appellate court's adopting a different view of the other points in the case, in which event his ruling would have resulted in a mistrial, which, under our system of practice, should never occur in a chancery case.

In the present case, however, we are satisfied that the error committed did not result in doing any injustice to the complainant. It is apparent that the question of first importance is whether the title to the lot was taken in the name of defendant with complainant's assent; and upon this question the testimony is not only convincing, but overwhelming, in favor of defendant. Even the complainant's testimony is hardly a denial of the fact, while the testimony of four other witnesses is positive that he did

assent to the making of the deed to his wife. This, in connection with the fact of the indorsement upon the contract, and of his acquiescence for a period of 12 years, including a period of two years after he had separated from his wife, puts the question beyond any reasonable doubt.

It is contended that oral authority to Burrows to convey to the wife is void under the statute of frauds; but the complainant is not at liberty to raise this question in this case. Mr. Burrows, the vendor, was the owner of the legal title. The complainant had an equitable title, which he could discharge by a surrender of the contract. On the deed being made to defendant, complainant, in writing, acknowledged the receipt of a deed in fulfillment of the contract. This was not in the nature of a parol contract, but a ratification in writing of the transfer of the legal title by Burrows, and amounted to an acknowledgment of satisfaction of the terms of the contract.

The complainant made no case entitling him to relief, and the decree will be affirmed, with costs.

The other Justices concurred.